## No. V.

### JACOB GARRET v. JOHN D. NASH AND WIFE.

*Appeal from San Augustine.*

HEMPHILL, CHIEF JUSTICE.—Ellen A. Nash, being joined by her husband, instituted suit in the court of probate for the county of San Augustine against Jacob Garret, the appellant in this court, and others named in the petition, to recover the portion of the estate of her former husband, Claiborne Garret, deceased, to which by law she might be enti-

**Note 30.**—Whiting v. Turley, p. 453.

By the Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 262), Rev. Stats. 1895, art. 1181, providing that proceedings in civil suits "shall be by petition and answer," and providing against adoption of common law system of pleading, was only intended to designate a system of pleading and not to prescribe rules. It should be strictly construed. Underwood v. Parrott, 2 T., 168. The pleader, under our system, is not confined to the common law counts. The rules of courts of law and chancery, found in elementary treatises on pleading, are not conclusive authority in our system. Caldwell
Dallam—32. **(497)**

tled.  When the case came up for trial in the district court, the facts.
being agreed upon and submitted to the court, it was decided that the
said Nash and wife were entitled to one-fourth of the estate of which
the said Claiborne Garret died seized and possessed, after the payment of
all just demands against said estate; provided the said fourth part of said
estate did not exceed one hundred pounds of gold, or the value thereof.
From this judgment an appeal was taken to this court.  In the argument
of counsel our attention has been directed almost entirely to that portion
of the statement of facts in which the acknowledgment is made, that
Claiborne Garret departed this life in the month of May, 1837, leaving
the said Ellen A., his wife, destitute of any estate or property; and that
the said Ellen A. intermarried with the said John D. Nash in the month
of August following.

Our inquiries will then be reduced to the narrow compass of ascertain-
ing whether, under the circumstances of the impoverishment of the
widow, she was entitled to the fourth part of her deceased husband's
estate, notwithstanding her remarriage within the period of twelve
months after his death.

In Partida 6, Title 13, Law 7, it is declared, that men are sometimes
content to marry women who are poor and without a dowry; it is there-
fore but just and proper that since they loved and honored them through
life, they should not leave them destitute at their death.  The ancient
sages have therefore thought fit to ordain, that if the husband should not
leave such wife the means of living independently, and she should not
possess them herself, then she may inherit one-fourth of the estate, not-
withstanding he should leave children; but such fourth part ought not
to exceed one hundred pounds of gold, however great may be the estate
of the deceased.  It is unquestionable, then, that under the wise and
beneficent provisions of this law, the destitute widow is entitled to the
one-fourth of her deceased husband's estate, subject only to the limitation
that it shall not exceed one hundred pounds of gold.  But it is contended,
that notwithstanding the salutary guarantees of this law securing the
widow (who during the continuance of the matrimonial union has been
surrounded by comforts) from indigence and want, yet she forfeits all
its benefits by marrying a second time within the first twelve months of
her widowhood, or even during the course of her life.  To support the
position assumed by the appellant, reference is made to the 3d Partida,
title 11, Law 3, and to a passage in the works of Febrero.  In the Partida
it is said that the secular law prohibits the widow from marrying within
one year after the death of her husband, and imposes a penalty, upon
those who marry before that time, of infamy; and that she loses the arras

v. Haley, 3 T., 317;  Mays v. Lewis, 4 T., 38;  Holman v. Criswell, 15 T., 394;
Payne v. Benham, 16 T., 364;  Flores v. Maverick, 24 T., 526.

**Note 31.**—Hart v. King, p. 456.

Action of court in granting or refusing continuances will not be revised
unless it is plain that injustice has been done.  Ward v. Boon, Dal., 561;  Hipp
v. Bissell, 3 T., 18;  Hipp v. Huchett, 4 T., 20;  Ayers v. Duprey, 27 T., 593;
Peck v. Moody, 33 T., 84;  Addington v. Bryson, 1 App. C., sec. 1292;  Texas
Express Co. v. Scott, 2 App. C., sec. 72.  Where the allowance or refusal of

and other donations made her by her deceased husband, and all other things which he had left her by will, etc. The passage from Febrero is presumed to be the following: Hay tres casos no obstante enque pueda perder este derecho; Primero, si la vinda vive dishonestamente; secgundo, si secasan; Tercero, si se que dan usufructuarios: Febrero, vol. 1, part 1, cap. 1. ["There are three cases in which she loses this right (the marital fourth). If she leads a disgraceful life; second, if they are married; third, if they are usufructuaries."] If the law as expressed in the Partidas, remained still of force, and the comment of Febrero were not explained with other portions of his own works, and also by other commentators, the conclusion that the judgment of the court below was erroneous would be inevitable. But on a careful examination of the limited number of books and authorities on the subject of Spanish laws and jurisprudence to which we have access, we are of opinion that the law is repealed, and the passage in Febrero contradicted, or perhaps explained more fully by himself and other commentators of established authority. The Recopilacions are not within the reach of this court; and we are compelled to decide upon the provisions of the laws of Spain, not from a personal examination, but upon the authority of text-writers and commentators. On application then to the only attainable sources of information, we find in the Institutes of the Civil Law of Spain by Aso and Manuel, that the above law embraced in the Code of Partidas, which prohibited widows from marrying within a year after the death of their husband, has been annulled, and the civil penalties incurred thereby abrogated. See 1 White's Recop., p. 47.

On the passage which has been cited from Febrero it has been strenuously urged that should a widow ever marry again after the death of her husband, the marital fourth to which otherwise she was entitled would be forfeited. But subsequent comments on the same author, sanctioned, enlarged and modified by other writers, authorize us to conclude, that under the laws in force at the accrual of the rights of appellee, where the widow married a second time, whether before or after the first year of her widowhood, she lost the legal title to but enjoyed the usufruct of the *marital fourth* during her life, and this only when the husband left children at the time of his death; for otherwise it became entirely her own.

In the first volume of Febrero, Nov., p. 425, the author says in substance that poor widows, the children by inheritance from the father being rich, are entitled to a fourth part of the husband's goods, provided the same does not exceed one hundred pounds of gold. This right has no

the continuance is within the discretion of the court a very clear case of abuse of discretion must be shown to authorize a reversal. Lewis v. Williams, 15 T., 47; Byne v. Jackson, 25 T., 95; Baldessore v. Stephanes, 27 T., 455; McMahan v. Busby, 29 T., 191; Wiggins v. Fleishel, 50 T., 57; Allyn v. Willis, 65 T., 65; M. P. Ry. Co. v. Christman, 65 T., 369; Guy v. Metcalf, 83 T., 37; T. & P. Ry. Co. v. Hall, 83 T., 675; Hannah v. Chadwick, 2 App C., sec. 518.

**Note 32.**—Fulton v. Craddock, p. 458.

As a general rule, an appellate court will not disturb a verdict if there is any evidence to support it. French v. Wall, 2 T., 288; Edrington v. Kiger, 4 T., 89; Shackelford v. Wheeler, 7 T., 553; Cheatham v. Riddle, 8 T., 162;

existence in three cases, viz: 1. Where the widow lives licentiously. 2. Where she is married a second time. 3. Where she remains the usufructuary. Where she marries a second time before or after the year of widowhood, she will lose the (propeidad) legal title of the property belonging to her for her marital fourth, and it will be transmitted to the heirs of the husband; but she will, during life, have the usufruct of the property. It will be observed that the author in express terms makes no distinction between the cases of the widow's marrying within or after one year from the death of her husband; the presumption then is irresistible that, at the period when that commentator wrote, no such distinction existed in the laws of Spain. Let us also examine into the full extent of the author's position; for although the words "heirs of the husband," in the latter part of this quotation, are general terms and would ordinarily embrace all persons capable of inheriting the property of the deceased, yet comparing together the separate portions of this section, I can not perceive that the established rules of construction would be violated by limiting the words "heirs of the husband" to his children. The author only presents the case where the children are rich and the widow is poor; no allusion is made to the circumstance of the husband dying without children; and since such a condition of things does not appear to have been in the contemplation of the writer, the terms employed could not properly be extended to include persons not within the scope of his consideration. If this be the proper construction of the remarks of Febrero, they have no application to a case where the widow marries again, their being no children of the former marriage. We are not, however, left to speculate as to what the law is or should be under such a state of facts. According to some later authorities, the fourth part of the husband's property under such circumstances belongs entirely to the widow. Sala, in the Glustra Cion del Derecho Real de Espana, lib. 11, title 8, 2d vol., p. 61, Mexican edition of 1832, after describing the property (including the marital fourth) which the surviving partner of the matrimonial community is bound to reserve in favor of the children of the anterior marriage, so that although the survivor enjoys the usufruct, yet the goods can not be hypothecated or disposed of, then proceeds to say that this obligation to reserve (the legal title) ceases when there are no children in existence at the time of the death of the partner whose duty it is to do so; unless there be descendants of the children in whose favor the obligation will still subsist. The obligation also ceases if the dying partner consent that the survivor shall again marry, or if the children who

Russell v. Mason, 8 T., 226; Bridge v. Ballew, 11 T., 269; Latham v. Selkirk, 11 T., 314; Oliver v. Chapman, 15 T., 400; Scranton v. Tilley, 16 T., 183; Gammage v. Trawick, 19 T., 58; Baker v. Clepper, 26 T., 629; McGloin v. Vabderlif, 27 T., 366; Ward v. Bledsoe, 32 T., 251; Linney v. Peloquin, 35 T., 29; Simmonton v. Forrester, 35 T., 584; G. H. & S. A. Ry. Co. v. Bracker, 59 T., 71; Flannagan v. Pearson, 61 T., 302; Hanrick v. Dodd, 62 T., 75; Hamman v. Willis, 62 T., 507; H. & T. C. Ry. Co. v. Lee, 69 T., 556; Stitzle v. Evans, 74 T., 596; Western Union Telegraph Co. v. Jones, 81 T., 271; Blackburn v. Knight, 81 T., 326; G. C. & S. F. Ry. Co. v. Johnson, 10 T. C. A., 254; T. M. R. Co. v. Crowder, 25 T. C. A., 536; Burns v. M. & P. Oil Co., 26 T. C. A., 223; Lichenstein v. Lowenstein, 2 U. C., 382; Giltner v. Waters, 2 U. C., 513; Vance
(500)

are to derive the profit from the reservation give their consent. In such cases the surviving partner would retain the legal title, which otherwise would be lost by the new marriage. In a late work entitled the "El Diccionario de Legislacion," under the term "cuarta marital," we find the rules of law applicable to this subject, expressed in positive and distinct terms. The term "cuarta marital" is defined as follows. "El derecho que tiene la vinda a la cuarta parte de los bienes de sudifunto marido en el caso de quedar pobre sin dato, legado, ni otros bienes can que alimentarse. La cuarta marital corresponde a la vinda hasta la cantidad de cien libras de oro (102,705 reales y 30 maravedis vellon) aun cuando queden higos de este matrimonio, aun cuando con su trabajo pueda janar el sustento, aun cuando adquiera algunos lienes despues de la muerte de su marido, aun cuando su marido cleque et quinto, si este no alcamza para sus regulares alimentos, tanto en el caso do que el marido habiere hecho testamento como en el de que habiere muerto intestado, pues es una denda legal a cuyo payo estan sujitos todos los bienes del difunto. Pasando la vinda a segundas nuccias, esta obligada a reservar a los hijos la propriedad de la cuarta y gozara' solamente a su usufruto, mientras viva; pero a falta de hijos la hara suga enteramente." Sc. p. 156.

["The right which the widow has to the fourth part of the property of her deceased husband, when she is poor, without any dowry, legacy, or other goods with which to support herself. The marital fourth is due to the widow until it amounts to one hundred pounds of gold (102,705 reales and 30 marevedis vellon) although there may be children of the marriage; although she could with her labor support herself; although she may have acquired some property since the death of her husband; although her husband may be bequeathed to her the fifth, if this were not sufficient for her accustomed alimony; as well also when the husband shall have made a will, as when he shall have died intestate; since it is a legal debt, to the payment of which is subjected all the property of the deceased. The widow being married the second time is under obligation to reserve to the children (the propeidad) legal title of the fourth, and shall enjoy only the usufrust as long as she may live; but on failure of children, it shall become entirely her own."—Sc., 156.] In neither the works of Sala nor in the "El Diccionario de Legislacion" do we find any distinction drawn between the cases of remarriage within or after the first year of widowhood. From an examination of the above authorities we are authorized to consider the following as established principles and rules in Spanish jurisprudence, viz: That the prohibitory and final law forbidding marriages within one year from the death of the

v. Saathoff, 2 U. C., 658. Though the evidence is conflicting. Hall v. Hodge, 2 T., 323; Legg v. McNeill, 2 T., 428; Perry v. Robinson, 2 T., 490; Cotton v. Campbell, 3 T., 493; Green v. Hill, 4 T., 465; Carter v. Carter, 5 T., 93; Davidson v. Edgar, 5 T., 492; Cunningham v. State, 5 T., 440; Chevallier v. Brewer, 6 T., 398; Coles v. Perry, 7 T., 109; James v. Wilson, 7 T., 230; Horton v. Reynolds, 8 T., 284; Long v. Steiger, 8 T., 460; Stewart v. Hamilton, 19 T., 96; George v. Leonard, 19 T., 150; Cummins v. Rice, 19 T., 225; Montgomery v. Culton, 23 T., 156; Anderson v. Anderson, 23 T., 639; Baldridge v. Gordon, 24

husband, is annulled and reversed. 2. That where there are children in existence of the anterior marriage, the poor widow on her marriage will only enjoy the usufruct of the fourth part of her deceased's husband's property; but where there are no children of the former marriage, nor their descendants, the legal as well as the equitable title to the fourth vests in the widow and it becomes entirely her own.

This fourth must not exceed one hundred pounds of gold, and this is computed to amount to 102,705 reales and 30 maravedis vellon.

It may well be doubted whether the widow be not entitled to deduct the fourth from the whole of the property of the deceased husband, and whether the judgment of the court below be not erroneous, so far as it orders the award to the widow of the fourth only of the balance of the estate remaining, after the payment of all just claims against the same. But as this objection was not raised in argument, and as we have neither the means nor the time to investigate difficulties which have not presented themselves to the counsel, we will not take the question into consideration.

These remarks are made in order that this point may not be considered as concluded, should a controversy similar to the present ever arise for adjudication.

It is ordered, adjudged and decree that the judgment of the court below be affirmed, and the appeal dismissed at the costs of the appellant.

*Affirmed.*